IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CARLOS E. GUTIERREZ                                              PLAINTIFF

v.                          Civil No. 05-5083

CORPORAL WESLEY KERN                                             DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Carlos E. Gutierrez, a former inmate of the Washington County Detention Center, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Gutierrez contends his constitutional rights were violated while he was an inmate of the Washington County Detention Center when Corporal Wesley Kern used excessive force against him.

On October 13, 2005, defendant filed a motion for summary judgment (Doc. 14). By order entered on November 9, 2005 (Doc. 17), Gutierrez was directed to complete, sign, and return an attached questionnaire that would serve as his response to the summary judgment motion. On November 21, 2005, plaintiff's response to the court's questionnaire (Doc.18) was filed. The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

### I. BACKGROUND

Gutierrez was booked into the Washington County Detention Center (WCDC) on April 16, 2005, on two charges of possession with intent to manufacture and one charge of possession of drug paraphernalia. *Plaintiff's Response* (Doc. 18) (hereinafter *Resp.*) at ¶ 1(A). He was incarcerated solely because of pending criminal charges. *Id.* at ¶ 1(B).

-1-

AO72A
(Rev. 8/82)

Gutierrez completed a medical intake questionnaire as part of the booking process and indicated he had no health problems. *Resp.* at ¶ 2. He bonded out of jail that same day through Advantage Bail Bond, Inc. *Id.* at ¶ 3. He was released at 2:11 p.m. *Id.* at ¶ 4.

On April 19, 2005, Gutierrez was re-arrested and booked back into the WCDC on a bond revocation on the charges of possession with intent to manufacture and residential burglary. *Resp.* at ¶ 5. He again filled out a medical questionnaire on which he indicated he had no health problems. *Id.* at ¶ 6. He also signed a medical release and informed consent for medical services form. *Id.* at ¶ 7.

On April 23, 2004, Corporal Wesley Kern was assigned as a floor officer in pod A. *Defendant's Exhibit* 8. At about 6:00 p.m., Kern was in N block and instructed all inmates to get their trays and line up against the wall. *Resp.* at ¶ 9. Everyone started complaining about the way Kern was picking up trays and stated first shift just let the trays be stacked up and then counted. *Id.* at ¶ 10.

According to an incident report written by Kern, the following occurred:

> I informed them "Well, I am not on first shift. I do things the right way." As the detainees in N block were getting their trays and lining up, Detainee Carlos Gutierrez was saying "This is f------ bull shit. You can take this tray and shove it up your ass!" I then asked the detainee his name. Detainee Gutierrez asked "Why do you want to know my name?" I asked him again what his name was, and Detainee Gutierrez replied "Why don't you just find out." I said "OK", and I reached for the identification bracelet that Detainee Gutierrez was wearing. Detainee Gutierrez pulled away from me and I instructed him to step out into the hallway. Detainee Gutierrez said "F— you" as he started to get in line. I reached for Detainee Gutierrez's right arm so that I could escort him out into the hallway. Detainee Gutierrez actively resisted me by jerking his arm away from me. I again reached for Detainee Gutierrez's arm, and as he went to pull away from me I used the amount of force that I felt was necessary to gain compliance and placed Detainee Gutierrez against the wall in the hallway outside of N block. When I had Detainee Gutierrez against the wall he was trying to move around, and I

couldn't get a grip on his arm in order to place him in handcuffs. Detainee Gutierrez was squirming around and made it hard for me to keep him restrained, and at that point I felt threatened. I managed to get my left arm around Detainee Gutierrez's head and took him to the floor. I wrapped my legs around his in order to keep him restrained until assistance arrived. Deputy Mark Cuzick #532 was the first deputy to arrive for assistance. While I had Detainee Gutierrez restrained on the floor, the door to N block was still secured in the open position, and detainees that were still in N block were throwing their trays at me and Deputy Cuzick. Deputy Cuzick helped me get Detainee Gutierrez into handcuffs, and while we were doing so someone in N block hit Deputy Cuzick in the back of the head with a plastic cup. At that point six or sever other officer were arriving. When Deputy Cuzick got up to see who had hit him in the head with the cup, Detainee Kirk Clark tried to come out of the cell block and was yelling and cussing at the Deputies in the hallway. Detainee Clark was restrained and placed into Isolation cell 1. Wen everything had settled down in the hallway, I talked with Detainee Gutierrez about his actions, and what actions were being taken by me because of his. I informed Detainee Gutierrez that since he hasn't had any previous disciplinary problems, I wasn't going to lock him down; However, I was going to suspend visitation and commissary privileges for two weeks, and if he didn't have any problems between now and then he would get his privileges back.

*Deft's Ex.* 8 (mistakes in original).

According to Gutierrez, the events unfolded differently. He states:

Cpl. Kern said "I don't care what first shift did I'm second shift." I said, "You guy's need to make up your mind as to what you want done with these f----- trays." Then I proceded to get in line with a tray when I heard Cpl. Kern call me a bitch, and I replied "F— you. You're a bitch."

*Resp.* at ¶ 11 & ¶ 12.

When Kern asked for Gutierrez's name, Gutierrez states he merely replied "Why?" *Id.* at ¶ 13. At this point, Gutierrez asserts Kern said nothing but simply reached for Gutierrez's left arm which had the identification bracelet on it. *Id.* at ¶ 15. Gutierrez states Kern grabbed his left arm and pulled him into the hallway while at the same time telling him to get in the hallway. *Id.* at ¶ 16. Gutierrez denies having said "F— you" to Kern. *Id.* at ¶ 17.

AO72A
(Rev. 8/82)

Gutierrez states Kern never reached for his right arm but only for the left arm where the bracelet was. *Resp.* at ¶ 18. Gutierrez admits he jerked his arm away from Kern. *Id.* at ¶ 19.

According to Gutierrez, Kern slammed Gutierrez against the wall and placed his forearm on Gutierrez's throat applying pressure and making it hard for Gutierrez to breathe. *Resp.* at ¶ 20. Gutierrez states his hands were by his sides. *Id.* at ¶ 21. Gutierrez maintains Kern started yelling at him and applying more pressure to Gutierrez's neck. *Id. See also id.* at ¶ 39. In this position, with Kern's forearm to Gutierrez's neck and Gutierrez's back to the wall, Gutierrez questions how Kern could have been attempting to handcuff him. *Id.* at ¶ 21.

Gutierrez indicates he was being choked by Kern. *Resp.* at ¶ 22. Gutierrez states he asked Kern not to put his hands on him and moved to the side to relieve the pressure from Kern's forearm in order to be able to breathe properly. *Id.*

Gutierrez agrees that Kern put his left arm around Gutierrez's head and took him to the floor. *Resp.* at ¶ 24. However, Gutierrez states his arms were down at his sides at this point. *Id.* Once they were on the floor, Gutierrez states they were side by side. *Id.* at ¶ 25. Gutierrez maintains Kern never lapped his legs around Gutierrez until assistance arrived. *Id.* Gutierrez indicates he told Kern he was not resisting and raised his arms up in the air to show he was not resisting. *Id.* Gutierrez states Kern answered: "Shut the f— up!" *Id.*

Gutierrez agrees that Deputy Mark Cuzick was the first deputy to arrive to provide assistance. *Resp.* at ¶ 26. Gutierrez states Cuzick sat on Gutierrez's legs and placed handcuffs on him. *Resp.* at ¶ 28.

Gutierrez also agrees that the door to N block was still secured in the open position, and the detainees in N block were throwing their trays at Kern and Cuzick. *Id.* at ¶ 27. However,

AO72A
(Rev. 8/82)

Gutierrez states the inmates were throwing the trays because they had seen Kern use unnecessary force against Gutierrez. *Id.*

Gutierrez denies that Kern talked to him about his actions. *Resp.* at ¶ 34. Instead, Gutierrez maintains Kern only stated that he was suspending Gutierrez's visitation and commissary privileges for two weeks. *Id.* at ¶¶ 34 & 35. Gutierrez submitted a grievance on April 23, 2005, regarding Kern's conduct. *Resp.* at ¶ 37.

Gutierrez maintains he suffered both mental and physical injuries as a result of Kern's use of physical force. *Resp.* at ¶ 38. With respect to mental problems, Gutierrez states he flinches at sudden movements, has bad dreams about police brutality, and is afraid the deputies are out to get him. *Id.* As far as physical injuries go, Gutierrez indicates his neck was hurting him "real bad" and it was difficult for him to sleep, turn to the left, or look up without experiencing strong pain. *Id.* He indicates he still has problems with his neck and it feels like he constantly has to pop his neck. *Id.*

He states he also experienced a real bad cough which he believes was the result of Kern's use of his forearm on Gutierrez's throat. *Resp.* at ¶ 38. He indicates he was spitting up phlegm with black spots. *Id.*

On April 28, 2005, Gutierrez submitted a medical request stating he had a bad cough. *Resp.* at ¶ 40. He was prescribed cough tablets three times a day for seven days. *Id.* He did not mention any injuries he suffered as a result of the alleged use of force by Kern in the medical request. *Id.* at ¶ 41. Gutierrez indicates this is because he felt he would not receive the proper medical attention. *Id.* He felt that every person employed there was against him. *Id.*

AO72A
(Rev. 8/82)

On another medical request, Gutierrez states he mentioned his injuries just not "whom they were from." *Resp.* at ¶ 41. Specifically, this request is dated April 30th and he states he is having trouble with his neck when he sleeps and when he turns to the side. *Id.* at ¶ 42. He stated he had been prescribed Aleve but that it didn't do anything to make it go away. *Id.*

Gutierrez submitted another medical request on April 30th complaining that his prescription cold pills were doing nothing for his bad cough. *Resp.* at ¶ 44. He stated he needed something else. *Id.*

On May 6, 2005, Gutierrez submitted a medical request stating that he was supposed to see a doctor about his neck and cough and it had been a week and he hadn't seen the doctor. *Resp.* at ¶ 45. In response, Gutierrez was told he was on the list to see the doctor. *Id.* at ¶ 46. Gutierrez was seen by the doctor and prescribed cough syrup, Ibuprofen, and an antibiotic. *Resp.* at ¶ 47.

On May 15th Gutierrez submitted a medical request stating that he had run out of his prescribed cough syrup. *Resp.* at ¶ 48. The nurse wrote in the response area of the form: "Has been taken care of." *Id.* at ¶ 49. Gutierrez was asked to explain what this meant. *Id.* He stated that more cough syrup was placed on the medication cart for him. *Id.*

On May 17, 2005, Gutierrez submitted a medical request. *Resp.* at ¶ 50. He stated he had been prescribed cough syrup and an antibiotic for his bad cough and Ibuprofen for his neck pain. *Id.* He stated he had problems sleeping with his neck pain and had been to the doctor about all of this. *Id.* In response, he was put on the list to see the doctor. *Id.* at ¶ 51.

AO72A
(Rev. 8/82)

Gutierrez was seen by the doctor and prescribed a stronger antibiotic, cough syrup, and Aleve. *Resp.* at ¶ 52. However, Gutierrez states he was not given the Aleve but was instead furnished with Ibuprofen. *Id.*

On May 27, 2005, Gutierrez submitted a medical request. *Resp.* at ¶ 53. He stated he still had his cough but his prescriptions had run out. *Id.* He indicated he needed to be checked. *Id.* He also stated the doctor had indicated he would be given Aleve for his neck pain and he had only received Ibuprofen. *Id.*

In response, Gutierrez was put on the list to see the doctor. *Resp.* at ¶ 54. Gutierrez was seen by the doctor and prescribed cough syrup, a stronger anti-biotic, and Ibuprofen. *Id.* at ¶ 55.

On May 28, 2005, Gutierrez submitted a medical request stating he was supposed to get Aleve for his bad neck pains but had only been getting Ibuprofen. *Resp.* at ¶ 56. He also stated that he had trouble turning his neck to the left and looking up. *Id.* He indicated he had the neck pain for a month now. *Id.* Gutierrez also submitted a medical request to see the doctor about his cough. *Resp.* at ¶ 59.

Gutierrez was seen and prescribed the same medications except that he was given a stronger antibiotic. *Resp.* at ¶¶ 58 & 60. Gutierrez does not recall the date of this visit to the doctor or the visit in response to his request dated May 27th. It is not clear from Gutierrez's response whether he was seen once by the doctor in response to the three requests or whether he was actually seen more than once.

On May 30, 2005, Gutierrez submitted a medical request stating that he had a wisdom tooth coming through and that the inside of his cheek was swelling. *Resp.* at ¶ 61. He indicated

AO72A
(Rev. 8/82)

he was having trouble eating and sleeping. *Id.* In response, the nurse prescribed Ibuprofen 600 mg., three times a day, on an as needed basis. *Id.* at ¶ 62.

The WCDC has a policy regarding the use of force. *Resp.* at ¶ 63. The policy provides that only the amount of physical force necessary to maintain or regain control of a detainee shall be used by the staff of the WCDC. *Id.* at ¶ 64.

Gutierrez maintains Kern failed to follow this policy when he used unnecessary force against Gutierrez when he was not resisting. *Resp.* at ¶¶ 65-66. Gutierrez states he never placed his hands on Kern "for him to feel threatened." *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

AO72A
(Rev. 8/82)

"A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendant contends he is entitled to summary judgment in his favor. First, he argues Gutierrez can offer no proof that Kern's conduct was objectively unreasonable. Second, Kern contends Gutierrez has not alleged sufficient injury to state a claim under the Prison Litigation Reform Act. Finally, Kern contends he did not violate any clearly established law with regard to the use of force and is therefore entitled to the full protection afforded by qualified immunity.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

In this case, Gutierrez was a pretrial detainee. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

AO72A
(Rev. 8/82)

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

Applying the applicable law to the facts of this case, the court concludes there are genuine issues of fact exist as to whether Kern used excessive force against Gutierrez. Kern and Gutierrez have given contradictory versions of what occurred during the alleged use of force. The court has been provided with no other statements from officers or witnesses. While Gutierrez apparently lost certain privileges for a period of time following this incident, nothing was submitted to the court indicating he was charged with a disciplinary violation or found guilty of having violated the rules of the facility. Gutierrez admits only pulling away while being choked in order to get himself in a position to breathe properly and making certain remarks to Kern.

With respect to the injuries, there is evidence establishing Gutierrez sought, and received, medical care on at least two occasions after the incident for a sore neck and a sore throat. *See*

AO72A
(Rev. 8/82)

*Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003)("An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment.")(citation omitted). At the summary judgment stage, we are not free to make credibility determinations and adopt one version of facts over another. Instead, we must view the evidence in the light most favorable to the plaintiff. We therefore cannot say as a matter of law that only a reasonable amount of force was used against Gutierrez.

Defendant next argues Gutierrez 's claim fails because he had no physical injury within the meaning of the physical injury requirement of the Prison Litigation Reform Act (PLRA). Codified as 42 U.S.C. § 1997e(e), section 803(d) of the PLRA provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." This section was "intended to limit access to the federal courts for certain prisoner claims, namely those for emotional distress unaccompanied by physical harm." *Shaheed-Muhammad v. Dipaolo*, 138 F. Supp. 2d 99 (D. Mass. 2001).

The provisions of § 1997e(e) have consistently been applied to excessive force claims. *See e.g., Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)(A bruised ear lasting three days did not constitute physical injury for purposes of § 1997e(e)); *Warren v. Westchester County Jail*, 106 F. Supp. 2d 559, 569 (S.D.N.Y. 2000)(excessive force claim dismissed where inmate's injuries were no more than *de minimis* and thus insufficient to satisfy § 1997e(e)). Here, Gutierrez contends that as a result of the use of force his neck hurt him so much he could not sleep at night, turn to the left, or look up. *Resp.* at ¶ 38. Gutierrez maintains he also experienced

a real bad cough and was spitting up phlegm with black spots. *Id.* Gutierrez maintains these injuries were caused by Kern's applying pressure to his neck and choking him. *Id.*

In response, Gutierrez was prescribed medication and seen by the doctor at least twice. *Resp.* at ¶¶ 47, 52 & 55. We believe Gutierrez has shown sufficient physical injury to satisfy the provisions of § 1997e(e).

Finally, Kern argues he is entitled to qualified immunity. The Fourth Amendment "reasonableness" inquiry is also used in determining whether an officer is entitled to qualified immunity. *Sinclair v. Des Moines*, 268 F.3d 594, 596 (8th Cir. 2001)(*citing Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)(the court's initial inquiry should be whether the officer is entitled to qualified immunity)); *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000)(Court addressed both qualified immunity and the merits of the Fourth Amendment claim. It noted "[t]he linchpin of qualified immunity is the objective reasonableness of the officer's actions; objective reasonableness is also applied in analyzing the merits of Fourth Amendment excessive-force claims."). *See also Nelson v. County of Wright*, 162 F.3d 986, 989-90 & 990 n. 5 (8th Cir. 1998)(declining to decide whether "conceptual difference" exists between standards but reaching same result under qualified immunity and on merits of excessive force claim). "Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeffer*, 262 F.3d 847, 849 (8th Cir. 2001)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v.*

*Bryant*, 502 U.S. 224, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991)(quoting, *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). The inquiry is normally one of pure law. *J.H.H. v. O'Hara*, 878 F.2d 240 (8th Cir. 1989).

"The determination of whether a state actor is entitled to the protection of qualified immunity is a two-step process." *Washington v. Normandy Fire Protection Dist.*, 272 F.3d 522, 526 (8th Cir. 2001). First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Second, the court must determine if the right was clearly established. *Washington*, 272 F.3d at 256.

"[T]here is no question that [the] right to be free from excessive force" is clearly established. *Wilson*, 209 F.3d at 716. *See also McGruder v. Heagwood*, 197 F.3d 918 (8th Cir. 1999). There is no doubt the use of some force is reasonable when an individual is threatening to use, or is using, force against an officer, or when an officer believes his safety or that of others is at risk.

If the incident occurred as Kern states it did, the court would no doubt conclude Kern's actions were reasonable and he would be entitled to qualified immunity. If the incident occurred as Gutierrez says it did, the use of force would not have been reasonable. Kern's "arguments asserting qualified immunity rest largely on ignoring disputed facts in the record and asking this court to resolve factual disputes in [his] favor." *Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001).

-13-

The court is not free to chose to believe Kern's version of the events, and disbelieve or ignore Gutierrez's version of the events. On the record before the court, we find Kern not entitled to qualified immunity.

## IV. CONCLUSION

I therefore recommend that defendant's motion for summary judgment be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of December 2005.

          /s/ Beverly Stites Jones
          UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)