IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CARLOS E. GUTIERREZ                                                                PLAINTIFF

v.                                    Civil No. 05-5083

CORPORAL WESLEY KERN,
in his Official Capacity Only                                                      DEFENDANT

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Carlos E. Gutierrez, a former inmate of the Washington County Detention Center, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Gutierrez contends his constitutional rights were violated while he was an inmate of the Washington County Detention Center when Corporal Wesley Kern used excessive force against him.

On May 16, 2006, an evidentiary hearing was held in this case. At the conclusion of the hearing, the case was taken under advisement pending preparation of this report and recommendation.

On June 8, 2006, a notice of the death of the defendant was filed by defendant's counsel. (Doc. 34). The notice indicated the defendant Wesley Kern was killed in an automobile accident.

By order entered on June 12, 2006 (Doc. 35), plaintiff was given until July 7, 2006, to file a motion to substitute the administrator of Kern's estate pursuant to Rule 25 of the Federal Rules of Civil Procedure. On June 28, 2006, plaintiff filed a motion for clarification of the court's order and for an extension of time to file the motion to substitute if it became necessary to do so (Doc. 36).

On June 29, 2006, an order was entered (Doc. 37) granting plaintiff's request for an extension of time and his motion for clarification. Relevant case law discussing the distinction between official capacity and individual capacity claims was contained in the order. Plaintiff was given until July 24, 2006, to advise the court whether he intended to proceed with an official capacity claim against Kern only, in which case the claim would be the equivalent of a claim against Washington County, or an individual capacity claim, in which case Kern would be personally held liable, or both types of claims. Plaintiff was informed that if he intended to hold Kern personally liable, a motion to substitute Kern's estate would have to be filed.

On July 10, 2006, plaintiff filed a response to the court's order (Doc. 38). In his response, plaintiff states he would like to proceed with an official capacity claim against Corporal Wesley Kern and Washington County. In view of this response, on July 12, 2006, an order was entered (Doc. 39) directing the clerk to note on the docket sheet that the defendant was being sued in his official capacity only.

## I. BACKGROUND & EVIDENCE PRESENTED

At the evidentiary hearing, the court heard the testimony of the following witnesses: (1) Carlos Gutierrez; (2) Willie Tillman; (3) Monchello Poole; (4) Randall Denzer; (5) Wesley Kern; (6) Susan Johnson; (7) Mark Cuzick; and (8) Rhonda Bradley. For purposes of discussion, we will summarize in the first person the testimony given.

AO72A
(Rev. 8/82)

*Carlos Gutierrez*

I'm twenty-eight years old. I was booked into the Washington County Detention Center (WCDC) on April 16, 2005. I had no health problems. I bonded out that day and was released in the early afternoon.

On April 19, 2005, I was arrested again and booked into the WCDC. I was picked up on a drug charge. My bond was revoked by the bondsman. I was in pretrial status. I completed a medical questionnaire and stated I had no health problems.

The incident occurred on April 23, 2005. I was in A pod, N block. I had not had any problems from the 19th until the 23rd. I hadn't had Kern as a floor deputy prior to the 23rd.

The incident occurred after last chow. The earlier shift had us stack the trays by the wall near the door. Then when Kern came to take the trays he made us pick up the trays and get in alphabetical order.

Everyone started complaining. Everyone was saying the other shift told us to stack them by the door. Kern said he was not the other shift. I walked by and said: "You guys need to make up your minds what the f— you want us to do with these trays." In response, Kern said: "Bitch." I stopped and turned around and said: "Who are you calling a bitch, bitch."

I had just turned my back when Kern called me a bitch. I know it was Kern. All the guys in the back of the line were cussing Kern. There were a lot of inmates but Kern was the only officer.

Kern asked me for my name. I asked for his. I told him not to worry about it. He reached for my identification bracelet. I moved back. He reached for it again. This time he

AO72A
(Rev. 8/82)

grabbed me by the wrist. I had my tray in my right hand. I put it on the table on the way out. Kern took me out the door to the hall. He had me by the left wrist.

Kern snapped me against the wall. He had his forearm to my throat. He told me not to be cussing at him. I was having trouble breathing because he had his forearm against my throat and I was against the wall. My arms were at my sides. I wriggled around because I couldn't breathe. I couldn't talk. He went to take me to the ground in a head lock. He missed the first time. The second time he got me to the floor.

We were on the floor just outside the pod door. The door was open.

I said I was not resisting. I put my arms up to show I was not resisting.

Cuzick sat on my legs and then handcuffed me. Two female sergeants on duty came down. The other inmates were throwing cups and trays. Most of the inmates threw their cups and trays. I felt the trays. Some of the trays were hitting me. It was getting pretty wild and out of control. They were saying let him go. He didn't do anything.

Kern went off on me because of what I was saying. At first he was calm. Then he blew up and slammed me on the wall.

An officer is entitled to look at your identification bracelet at anytime. I pulled away because I felt threatened. I didn't want to tell Kern my name.

The sergeant talked to both of us. I said I wasn't doing anything. Kern came to me and said he was taking my visitation and commissary privileges away for two weeks. I was put back in the barracks. At the time, I felt everyone at the WCDC was against me.

I don't believe Kern asked me if I needed medical attention. I did put in a sick call slip.

-4-

AO72A
(Rev. 8/82)

My neck was injured. I was spitting up phlegm with black spots. I had a bad cough for awhile. I believe the cough originated from this incident. I didn't mention this in my medical requests because I didn't want to tell the nurse or doctor it was from an injury caused by Kern. I felt they might not take care of me properly. I was prescribed antibiotics for the cough. I never had any problems with my neck until after the incident.

I was in the WCDC until about January. I never had any other problems.

I was there on May 3rd when there was a fight involving Justin Kelly. I didn't get into a fight with him. I didn't try to break the fight up.

Kern lied in his report. I didn't say some of the things his report says I did. He didn't wrap his legs around me. He couldn't have checked the computer to see if I had any disciplinary charges. Other things in the report don't make sense. How could he handcuff me when I had my back to the wall?

Kern used excessive force against me. I wasn't resisting and he slapped me against the wall.

I don't consider myself to be aggressive or violent. I'm in prison for possession of cocaine and marijuana with intent to distribute. I have been convicted of domestic battery. I have been busted down once at the Arkansas Department of Correction (ADC) for fighting.

*Willie Tillman*

I'm an inmate in the ADC. I'm twenty-three years old.

I was in A pod on April 23, 2005. We were lined up for chow call to return the trays. We were in the pod. The pod is just a group of cells.

AO72A
(Rev. 8/82)

There were about thirty-five inmates. We were in the day-room by the door. Kern was yelling for us to hurry up and line up. Gutierrez was the sixth or seventh person and talking.

I didn't know Gutierrez personally. We were just inmates together.

Kern asked Gutierrez what his name was. Kern asked to see Gutierrez's arm band. Gutierrez pulled back. Kern grabbed Gutierrez and slammed him against the wall. The door opened and then we all threw the trays out. It started when Kern was inside the pod and ended up outside.

Gutierrez had his arms out saying: "Why are you doing this?" Another officer came. It was probably three or four minutes before the other deputies came. The inmates were getting rowdy. We were ready to start a riot. Everyone was yelling–saying that ain't right.

I never saw Gutierrez resist. The inmates threw the trays because there was no reason for the use of force. Officers get too aggressive. They get on a power trip. I was one of the first to throw a tray.

Gutierrez didn't swing or do anything. Kern didn't put Gutierrez in a position to handcuff him. When Kern had Gutierrez against the wall, Kern would have had to turn Gutierrez around to handcuff him. When the officers want to handcuff you, they tell you.

On May 3, 2005, there was a fight involving Justin Kelly. They didn't prove I was in the fight. It was Gutierrez and Kelly in a one-on-one brawl.

Kern broke Justin Kelly's finger at the old WCDC. I would say Kern is a problem. Kern got into a fight earlier this year. He continuously gets into fight. I went to the hole a bunch of times for fighting with other inmates.

AO72A
(Rev. 8/82)

### Monchello Poole

I'm an ADC inmate. I'm twenty-two years old.

In April of 2005, I was in pod A at the WCDC. I was there on April 23rd.

It started over trays. First, they were having us stack the trays up. Then they had us get in line. We had the trays stacked up. It irritated us that Kern had us get in a line. There were words between Kern and Gutierrez. I can't recall the words.

It started in the cell block and went out into the hallway. Kern grabbed Gutierrez as he was walking away and pulled him into the hallway. Kern slammed Gutierrez up against the wall. Gutierrez broke loose trying to get away from the scuffle. He was trying to defend himself. Kern slammed Gutierrez to the floor.

Gutierrez did not resist. He had his hands down. Gutierrez put his hands up when he was thrown to the floor. The positions Kern put Gutierrez in Kern couldn't have handcuffed Gutierrez.

The whole pod was mad. Kern could have taken care of it a totally different way. He could have talked it out.

Kern has a history of messing with inmates. Kern was always fighting. He had a bad attitude towards Blacks and Hispanics.

I had a fight with Kern myself.

### Randall Denzer

I work for the Washington County Sheriff's Department. I am the jail administrator. I am the records custodian.

AO72A
(Rev. 8/82)

The use of force policy basically provides that officers can use the amount of force necessary to maintain control. *Defendants' Exhibit* 21.

We keep records tracking the movements of inmates. *Defendants' Exhibit* 22 (tracking record for Gutierrez). The records indicate that on May 3, 2005, at 11:04 a.m. there were problems with Gutierrez. *Id.* Specifically, there was a potential problem, a fight with inmate Kelly. *Id.* When there is a fight between inmates, the inmates are separated.

Gutierrez was made trustee on December 8, 2005. *Defendants' Exhibit* 22. He became eligible to be a trustee when he became committed to the ADC.

We keep medical records on the inmates. *Defendants' Exhibit* 23 ( Gutierrez's medical records). The records contain the nurse's and doctor's notes as well as a medication log.

Meals are served three times a day. The trays are put into a heated cart. The cart is pushed to the cells. Detainees line up. The meals are issued. The trays are plastic and have lids, spoons, and cups. After the meals are eaten, the trays are collected and all pieces must be accounted for.

Different shifts may have used different procedures at meal time. At this point, we had just been in the new facility a month.

Normally when an officer goes into a cell block, the door shuts behind him. Usually the trustee doesn't go into the cell block.

I didn't know about the April 23, 2005, incident until this lawsuit. I may have gone over Kern's report but I don't recall it.

I believe Gutierrez has been in the WCDC eleven or twelve times. Gutierrez is generally a compliant inmate.

I have never been advised that Kern was biased against Blacks or Hispanics. I have never been advised he is hot headed or has had more confrontations than other officers.

### *Wesley Kern*

The incident on April 23, 2005, was the first contact I had with Gutierrez on second shift. I was going through and picking up trays.

I had been trained to have the detainees get in a line, alphabetically, and turn in their trays to be counted. This is the only procedure I had been taught.

I left the trustee behind when I entered the cell block. I told the inmates to get in line and get their trays before I brought the cart in. Gutierrez said: "This is bullshit." He said something like: "Shove the tray up your ass."

I said: "Excuse me. What is your name?" He said: "Why don't you find out?" So I said okay and reached for his arm with the band. I said step in the hall.

I don't recall which hand Gutierrez had his tray in. I don't recall Gutierrez placing his tray on the table.

I was not trying to get physical. I wanted to talk to him. He said: "F— You." He was walking away. He jerked away. When he pulled back, I felt he was resisting and that I needed to take control. There were thirty-two other inmates. I needed to get the situation under control. I grabbed Gutierrez and escorted him to the hall. I put him against the wall. It turned out he was

AO72A
(Rev. 8/82)

facing me. I tried to grab his arm and put it behind him to cuff. He pulled away. I grabbed him around the head and took him to the floor. I wrapped my legs around him.

Gutierrez did say he was not resisting. At that point, I released the pressure and just kept him under control until another deputy arrived. Cuzick came and handcuffed him.

I had already asked Gutierrez's name and told him to pick-up his tray. He was being non-compliant so I didn't ask to handcuff him.

I had personally had no problems with Gutierrez before this. I told him since I had personally had no problems with him I was going to suspended his visitation and commissary privileges for two weeks. I asked Gutierrez if he was okay--if he was hurt and need to see the nurse. He said: "No." I let him go back to the block.

I wrote an incident report shortly after this occurred. The incident report provides in pertinent part as follows:

> I informed them "Well, I am not on first shift. I do things the right way." As the detainees in N block were getting their trays and lining up, Detainee Carlos Gutierrez was saying "This is f------ bull shit. You can take this tray and shove it up your ass!" I then asked the detainee his name. Detainee Gutierrez asked "Why do you want to know my name?" I asked him again what his name was, and Detainee Gutierrez replied "Why don't you just find out." I said "OK", and I reached for the identification bracelet that Detainee Gutierrez was wearing. Detainee Gutierrez pulled away from me and I instructed him to step out into the hallway. Detainee Gutierrez said "F— you" as he started to get in line. I reached for Detainee Gutierrez's right arm so that I could escort him out into the hallway. Detainee Gutierrez actively resisted me by jerking his arm away from me. I again reached for Detainee Gutierrez's arm, and as he went to pull away from me I used the amount of force that I felt was necessary to gain compliance and placed Detainee Gutierrez against the wall in the hallway outside of N block. When I had Detainee Gutierrez against the wall he was trying to move around, and I couldn't get a grip on his arm in order to place him in handcuffs. Detainee Gutierrez was squirming around and made it hard for me to keep him restrained, and at that point I felt threatened. I managed to get my left arm around Detainee Gutierrez's head and took him to the floor. I wrapped my legs around his in

-10-

> order to keep him restrained until assistance arrived. Deputy Mark Cuzick #532 was the first deputy to arrive for assistance. While I had Detainee Gutierrez restrained on the floor, the door to N block was still secured in the open position, and detainees that were still in N block were throwing their trays at me and Deputy Cuzick. Deputy Cuzick helped me get Detainee Gutierrez into handcuffs, and while we were doing so someone in N block hit Deputy Cuzick in the back of the head with a plastic cup. At that point six or sever other officer were arriving. When Deputy Cuzick got up to see who had hit him in the head with the cup, Detainee Kirk Clark tried to come out of the cell block and was yelling and cussing at the Deputies in the hallway. Detainee Clark was restrained and placed into Isolation cell 1. Wen everything had settled down in the hallway, I talked with Detainee Gutierrez about his actions, and what actions were being taken by me because of his. I informed Detainee Gutierrez that since he hasn't had any previous disciplinary problems, I wasn't going to lock him down; However, I was going to suspend visitation and commissary privileges for two weeks, and if he didn't have any problems between now and then he would get his privileges back.

*Deft's Ex.* 8 (mistakes in original).

I didn't call Gutierrez a "bitch." Gutierrez didn't appear to be injured. When I asked him if he needed medical treatment he said he was okay. I asked him because a physical altercation had just taken place. I wanted to make sure if he was injured, he received proper medical attention.

I'm not biased towards Blacks and Hispanics. The incident with Kelly's finger occurred at the old facility. I went to shut Kelly's door. He kicked it open. I went to shut it again and he put his hand out. The door caught his finger. He was taken to the nurse's station and it was determined his finger was not broken.

I'll have been at the WCDC for three years on June 9, 2006. I may been involved in eight physical altercations in the three years. Some officers who have been there less time have been involved in more altercations.

*Susan Johnson*

I'm a nurse at the WCDC. I've been at the WCDC for a little over one and one half years. I've been a nurse for thirty-two years. I'm a licensed practical nurse.

The doctor diagnosed Gutierrez with an upper respiratory infection. Upper respiratory infections are caused by viral or bacterial infections or are secondary to an asthma attack.

Gutierrez was given Aleve and Ibuprofen for the neck. If there is a muscular problem, it is practical to give over-the-counter medications. If Dr. Howard believes there is some kind of underlying neck problems, he would order x-rays. The inmate would be taken to the hospital or clinic for the x-rays.

On May 18, 2005, Dr. Howard's notes indicate Gutierrez's neck is better. Gutierrez was to continue the Aleve, twice a day, as needed for the pain. The diagnosis was muscle spasms.

I would not have been working at the time Dr. Howard saw Gutierrez. I was working a later shift. To my knowledge, I was never present when Gutierrez was seen by Dr. Howard.

I've never heard of an upper respiratory infection being secondary to a neck injury. To my knowledge that is not possible. In my experience, if an inmate believes he has been injured as a result of an altercation with a guard, he includes that information in the medical request.

*Mark Cuzick*

I'm a jailer at the WCDC. I have been in this position since February of 2005. I usually work in intake.

On April 23, 2005, I heard some racket down on the floor. I was probably twenty feet away at first. I heard noise and the inmates yelling. I thought someone turned the cart with the cups, trays, etc., over.

I saw Kern with his legs and arms around Gutierrez. Both were on the floor. Gutierrez was not resisting when I saw him.

I tried to get the pod door closed to maintain control of the inmates in the block. There were thirty to thirty-two inmates in the block. I tried to get handcuffs on Gutierrez. It took fifteen to twenty seconds to get the cuffs on him. I sat on his legs and bent his hand behind him to handcuff him.

Gutierrez did not appear to be injured. He didn't ask for treatment.

I only saw one inmate throwing trays and stuff. However, there were trays and cups all over. Someone hit me on the back of the head. When I was hit, I turned and saw one inmate standing at the door and the rest of the inmates were hollering. About then, other deputies arrived to provide assistance.

### *Rhonda Bradley*

I'm a licensed practical nurse. I have worked at the WCDC for a little over four years.

If an inmate blames an injury on an altercation with a guard, the inmate usually includes it on his medical request. It would surprise me if the inmate didn't include that. It hampers medical treatment if an inmate lies on a medical request.

Except in emergency situations, inmates put in written requests for medical treatment. In emergency situations, the inmates are brought straight to the office.

If an inmate complains of muscular soreness and Dr. Howard believes there is an underlying problem, he normally does an x-ray. I've been a nurse since 1993. I've never heard of an upper respiratory infection caused by trauma to the neck. I don't recall Dr. Howard saying

AO72A
(Rev. 8/82)

Gutierrez's neck problem might be related to a cough. It is possible for a really deep cough to cause neck pain.

Inmates sometimes exaggerate the dates on their requests to get treatment. Susan has been present during visits by Dr. Howard. However, she is usually there after he leaves.

## II. DISCUSSION

In this case, Gutierrez was a pretrial detainee. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The

AO72A
(Rev. 8/82)

relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

According to the testimony, Kern was the only officer in the pod when in excess of thirty inmates began to complain and object to an order he had given them. The evidence indicates a verbal exchange between Kern and Gutierrez quickly escalated into a physical confrontation. It is undisputed that Gutierrez refused to provide his name when Kern requested it and pulled away when Kern reached for Gutierrez's identification bracelet.

At this point, it was reasonable for Kern to conclude there was a need to maintain order and control. Some use of physical force was reasonable under the circumstances. Contradictory descriptions of the amount of force used were offered. We find it unnecessary to determine whether the amount of force used could be considered "excessive" because there is no basis on which the defendant can be held liable.

As noted above, Gutierrez has indicated he is pursuing only an official capacity claim against Kern (Doc. 38). An official capacity claim is considered a claim against the governmental entity. *See Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998). *See also Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). A plaintiff may establish governmental liability under § 1983 by proving that his constitutional rights were violated by an "'action pursuant to official [governmental] policy' or misconduct so pervasive among non-policymaking employees of the [governmental entity] 'as to constitute a "custom or usage" with the force of law.'" *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998)(*quoting Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d

AO72A
(Rev. 8/82)

611 (1978)). *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ("a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983."); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)(interpreting Congress' intent to limit § 1983 liability to situations that municipalities could control, without obligating municipalities to control the conduct of others).

The Eighth Circuit has defined policy as "an official policy, a deliberate choice or a guiding principle or procedure made by an official with authority," and custom as a "persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536 (8th Cir. 1999). *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir.1999). In addition, to showing the existence of a custom or policy, plaintiff must show a direct causal link, indicating that the policy or custom is "the moving force [behind] the constitutional violation," *Mettler*, 165 F.3d at 1204 (*citing Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).

The record in this case is simply devoid of any suggestion of the existence of a custom or policy on which to hold Washington County liable. Whether or not Kern used excessive force against Gutierrez, there was no showing that any use of force was pursuant to a policy or custom of Washington County or that Washington County acted with deliberate indifference to the constitutional rights of detainees such as Gutierrez. *See City of Canton v. Harris*, 489 U.S. 378, 387-388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). *See also Board of County*

AO72A
(Rev. 8/82)

*Commissioners of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)("[R]igorous standards of culpability and causation [for a § 1983 claim] must be applied to ensure that the municipality is not held liable solely for the actions of its employee.").

There was no evidence that Kern's alleged use of excessive force was in anyway authorized, acquiesced in, or ratified by Washington County. Nor is there any evidence to suggest the alleged use of excessive force was the result of any failure to train on the county's part or any proof of misconduct so pervasive among employees so as to constitute custom or usage. *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 (8th Cir. 1999).

### III. CONCLUSION

I therefore recommend that judgment be entered in the defendant's favor and this case be dismissed.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of July 2006.

/s/ Beverly Stites Jones
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)